**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TINAMARIE BARRALES and LATONYA WRIGHT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CONOPCO, INC. d/b/a UNILEVER<br><br>        Defendant. | **CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL**<br><br>Case No. 25-cv-10390 |

Plaintiffs Tinamarie Barrales and Latonya Wright, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Conopco, Inc. d/b/a Unilever ("Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      The heart of this case is a common problem faced by parents everywhere: children refusing to eat their vegetables.

2.      As many parents are aware, without vegetables children do not get all the nutrients they need to grow healthy and strong. But, as every parent also knows, when children do not want to eat something, there is little one can do to change their minds—at least, there is no *easy* solution.

3.      This is where Defendant's "SmartyPants vitamins" come in.

4.      Under the SmartyPants brand, Defendant sells a variety of vitamin supplements designed "to help fill the average nutrient gaps in American diets."[1]

5.      This case is about two of Defendant's gummy vitamins created for children: SmartyPants Kids Multi & Fiber vitamins and SmartyPants Fiber & Veggies vitamins (together, the "Vitamins").

6.      Both of these Vitamins are intended to aid kids' digestive health.[2]

7.      Defendant markets these gummy Vitamins as having the same fiber content as various fruits and vegetables, thus branding them as the answer to the picky-eater conundrum.

8.      On the Vitamins' bottles, and in online marketing, Defendant explicitly compares the fiber content of the Vitamins to the fiber content of various fruits and vegetables.

9.      Specifically, the Fiber & Veggies vitamin bottle and marketing claim that:

- "2 Gummies Contain as Much Fiber as 3 Cups of Kale";

- "2 gummies contain as much fiber as 4 prunes"; and

---

[1] https://www.smartypantsvitamins.com/pages/our-story
[2] https://www.smartypantsvitamins.com/products/kids-fiber-veg ; https://www.smartypantsvitamins.com/products/kids-multi-and-fiber?srsltid=AfmBOorquksFA__m0-CW17ac_HKtds_ianJG7MxVeiPbe8eXXZibe3im

- "2 gummies contain as much fiber as 1 cup of broccoli."

10.     The Kids Multi & Fiber vitamin bottle makes similar claims, stating that:

- "Each serving has approx. the same amount of fiber as 2 cups of broccoli."

11.     All of the above statements are false and intentionally misleading.

12.     First, Vitamins contain only soluble fiber, but fruits and vegetables contain both soluble *and* insoluble fiber. So, contrary to Defendant's claims, the Vitamins do not have the same amount of fiber as kale, prunes, or broccoli because the Vitamins lack the insoluble fiber those fruits and vegetables contain.

13.     While soluble fiber has some benefits, insoluble fiber—which the Vitamins lack but kale, prunes, and broccoli contain—helps with bowel movements and increases the bulk of stool.[3]

14.     Insoluble fiber "help[s] food and waste pass through the gut more easily,"[4] and without it, "the bowel does not get enough exercise, leading to fewer bowel movements and eventual constipation."[5] It also helps to increase the bulk of stool.[6]

15.     Insoluble fiber is especially essential for children. It "plays a pivotal role in our kid's digestive health," "support[s] gut health and regularity," and "can also contribute to overall wellness and helps kids build a better foundation for healthier diet habits."[7]

---

[3] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[4] https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary

[5] https://bastyr.edu/about/news/do-we-really-need-insoluble-fiber

[6] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[7] https://www.beginhealth.com/blogs/learn/what-is-insoluble-fiber-for-kids-benefits-and-importance-explained?

16.     Moreover, the Vitamins' source of soluble fiber can be counterproductive to digestion if taken in excess. Inulin fiber—the primary soluble fiber in both Vitamins—has been documented to "increase GI symptoms mildly," most frequently "flatulence followed by bloating."[8]

17.     Second, these fiber claims are misleading because multiple cups of these fruits and vegetables often contain higher total fiber contents than either of the Vitamins.

18.     As such, Defendant's representations that the Vitamins' fiber content is equivalent to that of broccoli, kale, or prunes, are false and deceptive.

19.     As a result of Defendant's concealments and misrepresentations, consumers paid a price premium for the Vitamins. The Vitamins are worth far less because they do not contain the same amount of fiber as fruits or vegetables. Plaintiffs and Class members suffered real economic harm by purchasing the Vitamins.

20.     Defendant's omissions and misrepresentations deprived consumers of the ability to make informed decisions and induced them to pay a price premium for a product that is, in fact, worth significantly less.

21.     Accordingly, Plaintiffs seek monetary and injunctive relief against Defendant under New York General Business Law ("GBL") §§ 349 & 350 on behalf of a proposed New York Class and Nationwide Class as well as under California consumer protection laws on behalf of a proposed California Class.

**THE PARTIES**

22.     Plaintiff Tinamarie Barrales is a resident of Huntington Park, California. She purchased Defendant's Kids Multi & Fiber vitamins because the bottle claimed that they contained

---

[8] https://pubmed.ncbi.nlm.nih.gov/20497775/

as much fiber as two cups of broccoli. Had Plaintiff Barrales known the Kids Multi & Fiber vitamins did not contain fiber equivalent to two cups of broccoli, she would not have purchased them or would have paid less for them.

23.     Plaintiff Latonya Wright is a resident of Brooklyn, New York. She purchased Defendant's Fiber & Veggies vitamins specifically because the bottle claimed that they contained as much fiber as three cups of kale. Had Plaintiff Wright known the Fiber & Veggies vitamins did not contain the fiber equivalent to three cups of kale, she would not have purchased them or would have paid less for them.

24.     Defendant Conopco, Inc. d/b/a Unilever is incorporated in New York, New York and headquartered in Englewood Cliff, New Jersey. Defendant acquired SmartyPants in November of 2020.[9]

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

26.     This Court has personal jurisdiction over Defendant because it is headquartered here, purposefully directed its activities to this District, committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides here, a substantial part of the events or omissions giving rise to the claim occurred in this

---

[9] https://www.unilever.com/news/press-and-media/press-releases/2020/unilever-to-acquire-smartypants-vitamins/

District and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

### A.     The Problem: Constipation in Children

28.     Constipation is a common problem in young children.[10] In fact, 1 in every 20 children's visits to the doctor is due to constipation.[11]

29.     Constipation in children can be caused by a variety of factors, including a low-fiber diet, holding in bowel movements, or changes in routine.[12]

30.     Regardless of the cause, though, medical professionals agree on the solution to constipation: add more fiber to children's diets.

31.     Johns Hopkins Medicine says "Often making changes in your child's diet will help constipation. Help your child to eat more fiber by . . . adding more fruits and vegetables." They list vegetables like broccoli and spinach as good sources of fiber.[13]

32.     The Mayo Clinic urges parents to "[s]erve your child more high-fiber foods, such as fruits, vegetables, beans, and whole-grain cereals and breads" because "[a] diet rich in fiber can help your child's body form soft, bulky stool."[14]

33.     Children's National Hospital in Washington D.C. runs a Bowel Management Program for children who need intensive care due to constipation.

34.     As a part of this program, children "[w]ork[] with nutritionists who help create recipes and diet plans rich in fiber." Specifically, the "nutritionists understand how to work with

---

[10] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242

[11] https://www.healthychildren.org/English/health-issues/conditions/abdominal/Pages/constipation.aspx

[12] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242

[13] https://www.hopkinsmedicine.org/health/conditions-and-diseases/constipation-in-children

[14] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242

picky eaters and can offer helpful tips for increasing daily fiber intake."[15]

35.    Although the solution to constipation may seem simple—increasing fiber intake through fruits and vegetables—children do not always make it so easy.

36.    Up to 50 percent of children are said to be "picky eaters," a label used to describe kids who will not eat vegetables, who only eat certain foods, and who have aversions to trying new foods.[16]

37.    For parents whose children are constipated but are also picky eaters—thus refusing to eat fiber-filled vegetables—there are few solutions.

38.    Now, however, Defendant represents its Vitamins as the answer to this conundrum.

**B.    Defendant Falsely Represents Its Vitamins as the Solution**

39.    Defendant is aware of the picky-eater problem faced by many parents, and it intentionally wants to frame its Vitamins as the solution.

40.    In an article announcing the release of the Fiber & Veggies vitamins, high-ranking SmartyPants employees indicate that they are aware of children's aversion to vegetables and how that translates to low-fiber diets and digestive problems.

41.    In this article, SmartyPants Scientific Advisory Board member Dr. Nicole Avena said,

> A little known fact is that children in the US only meet 50% of the daily value for fiber, resulting in impacts to their immune system and digestive health like constipation, bloating, and gastrointestinal discomfort. This is due in part to the fact that nearly half do not eat a daily vegetable . . . By introducing Kids Fiber & Veggies, SmartyPants is working to close the kids

---

[15] https://www.childrensnational.org/get-care/health-library/chronic-constipation
[16] https://www.nationwidechildrens.org/family-resources-education/700childrens/2018/06/picky-eating

fiber gap with each serving containing the same amount of fiber as 3 cups of kale.[17]

42.    In this same press release, SmartyPants' Chief Revenue Officer shared his personal motivation for creating this vitamin:

> [W]ith the digestive health category becoming increasingly more important with consumers, there couldn't be a better time to launch Kids Fiber & Veggies....As a father of two I know how hard it can be to get them to eat even one bite of broccoli, but it's crucial that we work to fill the kids fiber gap.[18]

43.    Evidently, the Fiber & Veggie vitamins were specifically formulated to address fiber deficiencies caused by a lack of vegetable consumption. As such, the claims equating the vitamins to vegetables are a key selling point of the product and are ubiquitous in Defendant's marketing.

44.    For example, on the Amazon product page for the Fiber & Veggies vitamins, Defendant wrote, "US children meet only 45% of the daily value for fiber. Each gummy serving contains the same amount of fiber as 3 cups of kale so your child gets more of what they need to

---

[17] https://www.globenewswire.com/news-release/2024/04/09/2860070/0/en/SmartyPants-Vitamins-Announces-Launch-of-Kids-Fiber-Veggies-Supplement.html
[18] https://www.globenewswire.com/news-release/2024/04/09/2860070/0/en/SmartyPants-Vitamins-Announces-Launch-of-Kids-Fiber-Veggies-Supplement.html

maintain regular digestion":



45.    Similar claims appear on the Fiber & Veggies product pages for most major retailers, including Walmart, Target, and Sam's Club.[19]

46.    Defendant uses analogous claims to advertise the Multi & Fiber vitamins, maintaining that both Vitamins provide as much fiber as multiple cups of kale.

---

[19] https://www.walmart.com/ip/SmartyPants-Kids-Fiber-Veggies-Gummies-60ct/14932808973 ; https://www.target.com/p/smartypants-kids-39-fiber-vitamin-chewables-60ct/-/A-93163458#lnk=sametab ; https://www.samsclub.com/ip/smartypants-kids-fiber-and-veggies-gummy-100-count/15216017658

47.     In a Facebook post from April 12, 2024, Defendant posted a graphic that marketed both Vitamins as providing fiber benefits. The post read, "Extra Digestive Support For Your Kids" with a photo of the Vitamins[20]:



---

[20]https://www.facebook.com/photo?fbid=834619725359936&set=pcb.834619788693263

48.     The post continued, urging parents to buy the Vitamins "if your kids are in need of a little extra digestive support," insisting that both Vitamins combined "contain[] the same amount of fiber as 8 ¾ cups of kale!":





49.     As expressed by high-ranking SmartyPants employees, Defendant is aware that many parents face the same problem: children are picky eaters and, consequently, suffer from fiber

deficiencies and digestive problems. Defendant is also aware that the solution is to eat more vegetables.

50.    To position themselves as the remedy to this difficult situation, Defendant intentionally engages in false advertising by consistently asserting that both its Vitamins can provide the same amount of fiber as the vegetables that children refuse to eat.

51.    Despite Defendant's claims, its Vitamins' fiber content is not comparable to that of fruit or vegetables. Fruits and vegetables contain both soluble and insoluble fiber, while Defendant's Vitamins only contain soluble fiber. Additionally, multiple cups of vegetables have a higher overall fiber content than that of the Vitamins.

## C.    Soluble vs. Insoluble Fiber

52.    Fiber is an essential nutrient commonly found in many fruits and vegetables.

53.    Unlike protein, fat, and sugars, the body cannot fully break fiber down, allowing it to pass through the body and provide the consumer with various benefits.

54.    There are two different types of fiber: soluble fiber and insoluble fiber. Each aids the consumer in different ways. Although some foods have more of one type of fiber than another, "most high-fiber plant foods contain both soluble and insoluble fiber."[21]

55.    Soluble fiber helps to slow digestion, decrease cholesterol, and lower blood sugar. Foods such as oats, apples, bananas, and avocados are high in soluble fiber.[22]

56.    Insoluble fiber is more commonly associated with aiding bowel movements. Insoluble fiber "help[s] food and waste pass through the gut more easily,"[23] and without it, "the

---

[21] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[22] *Id.*

[23] https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary

bowel does not get enough exercise, leading to fewer bowel movements and eventual constipation."[24] It also helps to increase the bulk of stool.[25]

57.    Insoluble fiber is especially essential for children. It "plays a pivotal role in our kid's digestive health," "support[s] gut health and regularity," and "can also contribute to overall wellness and helps kids build a better foundation for healthier diet habits."[26]

58.    Foods such as cauliflower, green beans, and potatoes are high in insoluble fiber.[27]

59.    Thes two types of fiber are distinct, but *together* they define the fiber content of various fruits and vegetables.

60.    Moreover, medical consensus stresses the importance of consuming a wide variety of fruits, vegetables, and grains to obtain both kinds of fiber and their complementary benefits.[28] In fact, ingesting too much of one kind of fiber can be harmful. For example, ingesting excess inulin fiber—the primary soluble fiber in both Vitamins—has been documented to "increase GI symptoms mildly," most frequently "flatulence followed by bloating."[29]

61.    In other words, both soluble and insoluble fiber are essential to maintaining a healthy digestive system.[30]

### D.    Defendant's False and Misleading Marketing of the Fiber Gummies

62.    Defendant sells a variety of vitamin supplements for all ages. The Vitamins are

---

[24] https://bastyr.edu/about/news/do-we-really-need-insoluble-fiber
[25] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.
[26] https://www.beginhealth.com/blogs/learn/what-is-insoluble-fiber-for-kids-benefits-and-importance-explained?
[27] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.
[28] https://www.healthline.com/health/soluble-vs-insoluble-fiber#sources-of-fiber
[29] https://pubmed.ncbi.nlm.nih.gov/20497775/
[30] https://www.mountsinai.org/health-library/special-topic/soluble-vs-insoluble-fiber

marketed as premium products, many of which are USDA Organic and Non-GMO Project Verified.[31]

63.    Specifically, Defendant sells two gummy Vitamins that claim to supplement children's fiber intake: the Multi & Fiber vitamin the Fiber & Veggies vitamin.

64.    On the Vitamins' bottles—and in online marketing—Defendant explicitly compares the fiber content of the Vitamins to the fiber content of various fruits and vegetables. For example, Defendant represents that one serving of the Fiber & Veggie vitamins has "as much fiber as 3 cups of kale."

65.    However, these comparisons are inherently false because the Vitamins only contain soluble fiber while fruits and vegetables contain soluble *and* insoluble fiber.

66.    Moreover, the vegetables that Defendant compares the Vitamins to have a higher total fiber content and soluble fiber content than the Vitamins.

      **1.      Defendant's False and Misleading Marketing of the Multi & Fiber Gummies**

67.    Defendant sells a gummy vitamin intended for children called the Kids Multi & Fiber vitamin.

---

[31] https://www.smartypantsvitamins.com/pages/certifications

68.    On the vitamin's bottle, Defendant claims that it has the same amount of fiber as two cups of broccoli[32]:



69.    This claim is inaccurate and misleading for two reasons.

70.    First, broccoli is made up of both soluble and insoluble fiber.

71.    In fact, half of a cup of broccoli contains 1.2 grams of soluble fiber and 1.2 grams

---

[32] After Plaintiffs Barrales purchased this product, the recipe and the claims on the bottle changed. The new recipe includes 4.5 grams of dietary fiber, and the bottle no longer claims that the vitamins contain as much fiber as 2 cups of broccoli. Plaintiff Barrales is still entitled to damages because she was misled by the original packaging.

insoluble fiber. Thus, two cups of broccoli have 4.8 grams of soluble fiber and 4.8 grams of insoluble fiber.[33]

72.    Second, two cups of broccoli have a total of 9.6 grams of fiber.

73.    According to the Supplement Facts label, these vitamins only include four grams of dietary fiber. Soluble fiber makes up all four grams of this dietary fiber:



74.    With only four grams of soluble fiber, these vitamins fall far short of the total fiber content, the soluble fiber content, and the insoluble fiber content of two cups of broccoli.

75.    As such, the claims on the bottle that compare the vitamins to broccoli are false and misleading. Despite what Defendant explicitly states, the fiber content in one serving of these vitamins is not the same as two cups of broccoli.

### 2.    Defendant's False and Misleading Marketing of the Fiber & Veggies Gummies

76.    Defendant also sells a vitamin intended for children called the Kids Fiber & Veggies vitamin.

---

[33] https://www.ncbi.nlm.nih.gov/books/NBK326737/table/lipids_lifestyle-changes-lipids-and-lipoproteins.T._7/

77.    Defendant claims that "2 Gummies Contain as Much Fiber as 3 Cups of Kale." This statement can be found directly on the front of the bottle:



78.    This statement is also ubiquitous on the vitamins' online product pages. The following graphics are on the websites of Walmart, Target, Sam's Club, and Amazon:



Graphic seen on Sam's Club, Target, and Amazon



Graphic seen on Amazon, Walmart,
Sam's Club, and Target



First graphic shown on Walmart's website

79.     If consumers purchase the vitamins in person, the claim about kale is right on the bottle, front and center. If consumers purchase these vitamins online, Defendant emphasizes this kale comparison so aggressively that it is hard to miss.

80.     Drawing consumers' attention to the claims about kale is no mistake. As revealed by SmartyPants executives and board members, the comparison to vegetables—specifically kale— is a prime selling point of this product.

81.     However, this comparison is inaccurate and misleading for two reasons. For one, kale is made up of both soluble and insoluble fiber.

82.     In fact, one half cup of kale contains 0.7 grams of soluble fiber and 1.8 grams of insoluble fiber. [34] Thus, three cups of kale have 4.2 grams of soluble fiber and 10.8 grams of insoluble fiber.

83.     Secondly, three cups of kale have a total of 15 grams of fiber.

---

[34] https://www.ncbi.nlm.nih.gov/books/NBK326737/table/lipids_lifestyle-changes-lipids-and-lipoproteins.T._7/

84.     According to the Supplement Facts label, these vitamins include only three grams of dietary fiber. Moreover, soluble fiber makes up all three grams of this dietary fiber:



85.     With three grams of only soluble fiber, these vitamins fall far short of both the total fiber content, the soluble fiber content, and the insoluble fiber content of three cups of kale.

86.     As such, the claims on the bottle that compare the vitamins to kale are blatantly false, and they are intended to deceive parents who are desperate to sneak vegetables into the diets of their picky children.

87.     Defendant also sells an alternate version of the Fiber & Veggies vitamins. The secondary version uses a slightly altered recipe and has a different bottle design, as shown below[35]:



88.     This version of the bottle replaces the assertions about kale with comparisons to prunes, insisting that "2 gummies contain as much fiber as 4 prunes"[36]:

---

[35] The recipe for these vitamins differs slightly from the version purchased by Plaintiff Wright. The vitamins in this bottle contain 5 fewer calories and 0.5 grams more sugar. However, the amount of dietary fiber, soluble fiber, and organic greens blend are the same in both recipes.
[36] https://www.vitaminshoppe.com/p/kids-fiber-veggies-mixed-berry-60-gummies/smy-15183?sourceType=sc&source=SHOP&acqsource=adlucent&store=241&gad_source=1&gad_campaignid=23169093801&gbraid=0AAAAADrLyDNDmtk1o7_IivmzzBSZWVT1a&gclid=CjwKCAiAuIDJBhBoEiwAxhgyFszOuo6T5McNEWBxHGtEgyPQ9GaqMm1stoDwb105k2W8Ufwrhf0dNRoCjm0QAvD_BwE



89.   Once again, this comparison is false.

90.   Like the other recipe, this version of Defendant's Fiber & Veggies vitamins has three grams of dietary fiber, and soluble fiber makes up all three grams.[37]

91.   Prunes, on the other hand, contain both soluble and insoluble fiber. Four medium prunes contain 1.3 grams of soluble fiber and 1.8 grams of insoluble fiber.[38] In total, four prunes contain 3.1 grams of fiber.

92.   As previously stated, soluble and insoluble fiber serve different purposes and provide different benefits to the consumer. When someone eats a prune, they reap the benefits of both kinds of fiber, but when someone eats Defendant's Fiber & Veggies vitamins, they only get

---

[37] https://www.vitaminshoppe.com/p/kids-fiber-veggies-mixed-berry-60-gummies/smy-15183?sourceType=sc&source=SHOP&acqsource=adlucent&store=241&gad_source=1&gad_c ampaignid=23169093801&gbraid=0AAAAADrLyDNDmtk1o7_IivmzzBSZWVT1a&gclid=Cj wKCAiAuIDJBhBoEiwAxhgyFszOuo6T5McNEWBxHGtEgyPQ9GaqMm1stoDwb105k2W8Uf wrhf0dNRoCjm0QAvD_BwE

[38] https://www.northottawawellnessfoundation.org/wp-content/uploads/2017/11/NOWF-Fiber-Content-of-Foods.pdf

a low dose of soluble fiber. Thus, the fiber content of the vitamins cannot be compared to prunes.

93.     Lastly, when advertising this vitamin on social media, Defendant claims the fiber benefits of yet another vegetable: broccoli.

94.     In an Instagram post Defendant wrote, "each gummy serving contains the same amount of fiber as 1 cup of broccoli so your child gets more of what they need to maintain regular digestion"[39]:



95.     Despite what Defendant represents to consumers, two of these gummies do not provide that same amount of fiber as one cup of broccoli.

96.     These vitamins contain three grams of soluble fiber.

97.     One half cup of broccoli contains 1.2 grams of soluble fiber and 1.2 cups of insoluble fiber.[40] So, one cup of broccoli contains 2.4 grams of soluble fiber, 2.4 grams of insoluble

---

[39] https://www.instagram.com/p/C5jUYNTiY5Y/?img_index=5
[40] https://www.ncbi.nlm.nih.gov/books/NBK326737/table/lipids_lifestyle-changes-lipids-and-lipoproteins.T._7/

fiber, and 4.8 grams of total fiber.

98.    With only three grams of soluble fiber, the Fiber & Veggies vitamins do not meet the insoluble fiber threshold—nor the total fiber threshold—of broccoli. Thus, they cannot be equated to one another.

99.    Although Defendant wants consumers to believe that these vitamins contain either as much fiber as three cups of kale, four prunes, or one cup of broccoli, all of these claims are emphatically untrue. Fruits and vegetables contain soluble and insoluble fiber which are both essential to healthy digestion and bowel movements. A vitamin that only contains soluble fiber is not comparable to a fruit or vegetable.

100.    In reality, if a child took the allotted serving size of these vitamins, they would not ingest nearly the equivalent of the fiber content—insoluble or otherwise—of any of the listed fruits or vegetable.

### 3.    Defendant's False and Misleading Marketing of the Vitamins

101.    As previously shown, Defendant markets the Vitamins together, claiming they can complement one another for "Extra Digestive Support….":



102.    Defendant also claims that, if taken together, the Vitamins "contain[] the same amount of fiber as 8 ¾ cups of kale!":



103.    This statement is blatantly false.

104.    One half cup of kale contains 0.7 grams of soluble fiber and 1.8 grams of insoluble fiber. [41] Thus, 8 ¾ cups of kale contain around 11.7 grams of soluble fiber and over 30 grams of insoluble fiber. In total, 8 ¾ cups of kale contain over 40 grams of fiber.

105.    The Fiber & Veggies vitamins contain 3 grams of soluble fiber. The Multi & Fiber vitamins contain between 4 and 4.5 grams of soluble fiber, depending on the recipe.

106.    So, at most, these Vitamins contain only 7.5 grams of soluble fiber, an amount that is incomparable to that of 8 ¾ cups of kale.

107.    Once again, contrary to the marketing statements, the Vitamins do not contain the same fiber content as vegetables. Insoluble and soluble fiber serve different purposes and provide consumers with different benefits.

108.    By definition, the fiber content of kale—as well as other fruits and vegetables—is composed of soluble and insoluble fiber. If a supplement is lacking either kind of fiber, then its fiber content is inherently different from that of kale and, thus, they cannot be compared to one another.

**4.    Summary of Defendant's False and Misleading Statements by Vitamin Type**

109.    The following lists Defendant's false and misleading statements by Vitamin.

---

[41] https://www.ncbi.nlm.nih.gov/books/NBK326737/table/lipids_lifestyle-changes-lipids-and-lipoproteins.T._7/

110.    Multi & Fiber:

| Claim | Location |
|---|---|
| "Each serving has approx. the same amount of fiber as 2 cups of broccoli." | Bottle |
| "[Kids Fiber & Veggies combined with Kids Multi & Fiber] contains the same amount of fiber as 8 ¾ cups of kale" | Social Media |

111.    Fiber & Veggies:

| Claim | Location |
|---|---|
| "2 Gummies Contain as Much Fiber as 3 Cups of Kale" | Bottle |
| "Same Amount of Fiber as 3 Cups of Kale" | Amazon, Target, Sam's Club |
| "Each serving has as Much Fiber as 3 Cups of Kale" | Amazon, Target, Sam's Club, Walmart |
| "2 gummies contain as much fiber as 4 prunes" | Bottle |
| "Each gummy serving contains as much fiber as 1 cup of broccoli" | Social Media |
| "[Kids Fiber & Veggies combined with Kids Multi & Fiber] contains the same amount of fiber as 8 ¾ cups of kale" | Social Media |

## E.    Defendant Charges a Price Premium

112.    Defendant charges, and Plaintiffs purchased the Vitamins at, a premium price despite the availability of comparable, less expensive children's fiber supplements, which do not make the false and misleading claims of containing the equivalent level of fiber to actual fruits or vegetables:

| SmartyPants | Cost/Serving | Competitor | Cost/Serving |
|---|---|---|---|
| SmartyPants Multi & Fiber Vitamins (Target) | $0.82 | Mary Ruth's Kids Fiber Gummies (Vitacost) | $0.42 |
| SmartyPants Fiber & Veggies Vitamins (Target) | $0.75 | Lifeable Kids Prebiotic Fiber Gummies (Walgreens) | $0.53 |
| | | OLLY Kids' Friendly Fiber (OLLY) | $0.56 |
| | | Culturelle Kids Probiotic + Veggie Fiber (Target) | $0.66 |

113.    The statements that Defendant's Vitamins include as much fiber as multiple cups of vegetables or fruits was a deciding factor in Plaintiffs' decisions to buy the Vitamins. Accordingly, these claims allow Defendant to charge a price premium and consumers, like Plaintiffs, will still choose the Vitamins over other, less expensive products.

114.    However, Defendant's claims are false and misleading, meaning that Plaintiffs were injured when they paid a premium price for Vitamins that could not deliver the advertised benefits.

## CLASS ACTION ALLEGATIONS

115.    Plaintiff Wright and Plaintiff Barrales bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased the Vitamins within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

116.    Plaintiff Wright also brings this action on behalf of herself and on behalf of the following proposed New York Class, initially defined as follows:

> All individuals in New York who purchased the Vitamins within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

117.    Plaintiff Barrales also brings this action on behalf of herself and on behalf of the following proposed California Class, initially defined as follows:

> All individuals in California who purchased the Vitamins within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

118.    Excluded from the proposed Classes are Defendant, its, parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

119.    Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

120.    The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

121.    Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

122.    Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

123.    Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the

Federal Rules of Civil Procedure.

124.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

125.    **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within their control or Plaintiffs and the Classes themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

126.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a)    Whether Defendant engaged in the conduct alleged in this Complaint;

(b)    Whether Defendant violated the applicable statutes alleged herein;

(c)    Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

(d)    Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

(e)     Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(f)     Whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(g)     Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(h)     Whether Plaintiffs and the Classes are entitled to civil penalties;

(i)     Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

127.    **Typicality of Claims (Fed. R. Civ. P. 23(a)(3)).** The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

128.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and he has retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

129.    **Superiority of a Class Action (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class

members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

130.    Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Wright, the Nationwide Class, and the New York Class)

131.    Plaintiff Wright incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

132.    NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

133.    NY GBL § 349 applies to Plaintiff Wright, the Nationwide Class, and the New York Class because Defendant is headquartered in New York and the State of New York has a strong interest in regulating businesses within the State and protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

134.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to prevailing Plaintiffs.

135.    As alleged herein, Defendant's advertisements and promotion of the Vitamins are materially misleading and deceptive within the meaning of NY GBL § 349.

136.    Defendant's acts and practices deceived Plaintiff Wright and the class members. Plaintiff Wright and the class members reasonably relied on these representations and believed they were purchasing a product that had the same fiber content as various fruits or vegetables. In truth, the Vitamins cannot provide the advertised benefits.

137.    Plaintiff Wright and the class members did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as having the same fiber content as various vegetables or fruits. The Vitamins are not capable of delivering on the promises Defendant makes.

138.    Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Wright and the class members.

139.    Plaintiff Wright and the class members have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

140.    Plaintiff Wright and the class members have no adequate remedy at law.

141.    Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Wright and the class members and will continue to mislead consumers unless enjoined by this Court.

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiff Wright, the Nationwide Class, and the New York Class)

142.    Plaintiff Wright incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

143.    By reason of the acts set forth above, Defendant has been and is engaged in

consumer-oriented advertising and marketing against Plaintiff Wright and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

144.    NY GBL § 350 applies to Plaintiff Wright, the Nationwide Class, and the New York Class because Defendant is headquartered in New York and the State of New York has a strong interest in regulating businesses within the State and protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

145.    Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

146.    Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

147.    Plaintiff Wright and the class members have been injured by Defendant's deceptive acts or practices.

148.    Plaintiff Wright and the class members have no adequate remedy at law.

149.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Wright and the class members and will continue to damage both Plaintiff Wright and the class members and deceive the public unless enjoined by this Court.

150.    Pursuant to NY GBL § 350-e, Plaintiff Wright and the class members seek

monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

151.    Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the Vitamins. Plaintiff Wright and the class members reasonably relied on these representations and believed they were purchasing a product that had the same fiber content as various vegetables or fruits. However, regardless of which claim they saw, the Vitamins cannot provide the advertised benefits.

152.    Plaintiff Wright and the class members did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as having the same fiber content as various vegetables or fruits. The Vitamins are not capable of delivering on the promises Defendant makes.

153.    The widespread deception not only caused financial harm to consumers but also promoted misleading information about the fiber content of vitamins marketed to children, peddling the false narrative that gummy vitamins could provide the same fiber as fruits and vegetables.

154.    Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

**THIRD CAUSE OF ACTION**

**Violations of Consumers Legal Remedies Act (the "CLRA")**
**California Civil Code § 1750, et seq.**
**(On Behalf of Plaintiff Barrales and the California Class)**

155.    Plaintiff Barrales incorporates by reference all allegations in this Complaint and

restates them as if fully set forth herein.

156.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

157.    Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

158.    The Vitamins that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

159.    By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

160.    In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

161.    In violation of § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

162.    In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

163.    Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Vitamins are dietary supplements that provide the same amount of fiber as various vegetables or fruits. In reality, the Vitamins do not and cannot deliver the advertised benefits.

164.    Plaintiff Barrales reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fiber of the Vitamins an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

165.    Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Barrales and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Vitamins or would have paid substantially less for them.

166.    Plaintiff Barrales seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

**FOUTH CAUSE OF ACTION**

**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff Barrales and the California Class)**

167.    Plaintiff Barrales incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

168.    California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

169.    Defendant's false and misleading advertising claims regarding the Vitamins violate

all three prongs—unlawful, unfair, and fraudulent—of the UCL.

170.    First, Defendant's representations and omissions regarding the Vitamins are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

171.    Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Vitamins are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

172.    Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

173.    Plaintiff Barrales reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fiber content of the Vitamins an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Vitamins.

174.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Barrales and the California Subclass have suffered injury in fact and have lost money. Plaintiff Barrales and the California Subclass paid an unwarranted premium for the Vitamins and/or were denied the benefit of the bargain.

175.    Absent Defendant's misrepresentations and omissions, Plaintiff Barrales would not have purchased the Vitamins or would have paid substantially less for them.

176.    Plaintiff Barrales seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California

Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

## FIFTH CAUSE OF ACTION

### Violations of California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff Barrales and the California Class)

177.    Plaintiff Barrales incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

178.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

179.    The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

180.    Defendant violated section 17500 when it advertised and marketed the Vitamins through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Vitamins are dietary supplements that provide the same amount of fiber as various vegetables and fruits. In reality, the Vitamins do not and cannot deliver the advertised benefits.

181.    Plaintiff Barrales reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fiber content of the Vitamins an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Vitamins.

182.    As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Barrales and the California Subclass have suffered injury in fact and have lost money. Plaintiff

and the California Subclass paid an unwarranted premium for the Vitamins and/or were denied the benefit of the bargain.

183.    Absent Defendant's misrepresentations and omissions, Plaintiff Barrales would not have purchased the Vitamins or would have paid substantially less for them.

184.    Plaintiff Barrales seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiffs and All Classes)

185.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

186.    Plaintiffs and the Classes conferred a benefit on Defendant in the form of payments for the Vitamins.

187.    Defendant accepted and retained these payments, even though it misrepresented the efficacy of the Vitamins.

188.    It would be unfair for Defendant to keep the money spent without compensating Plaintiffs and the Classes because Defendant misled consumers into believing the Vitamins contained as much fiber as certain amounts of vegetables and fruits, when in fact it they do not.

189.    Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.      certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.      awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.      awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.      awarding Plaintiffs and the Classes exemplary and punitive damages;

E.      awarding Plaintiffs and the Classes civil penalties;

F.      granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.      enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.      awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.      awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.      awarding pre-judgment and post-judgment interest; and

K.      granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: December 15, 2025

> Respectfully submitted,
>
> By: */s/ Raphael Janove*
> Raphael Janove
> Max Ian Fiest
> **JANOVE PLLC**
> 500 7th Ave., 8th Floor
> New York, NY 10018
> Tel: (646) 347-3940
> raphael@janove.law
> max@janove.law